**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**NAROTHA LAVERNE OGDEN,**

          **Plaintiff,**          **Civil Action No. 17-cv-11935**

          **v.**          **District Judge Nancy G. Edmunds**

**COMMISSIONER OF**          **Magistrate Judge Mona K. Majzoub**
**SOCIAL SECURITY,**

          **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Narotha Ogden seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that she is not entitled to benefits under the Social Security Act.  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 17) and Defendant's Motion for Summary Judgment (docket no. 20).  This matter has been referred to the undersigned for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  (Docket no. 4.)  Having reviewed the pleadings, the Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and issues this Report and Recommendation.

## I.     RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 17) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 20) be **GRANTED**, and that the case be dismissed in its entirety.

## II.      PROCEDURAL HISTORY

On May 7, 2014, Plaintiff applied for Disability Insurance Benefits ("DIB"), alleging that she has been disabled since November 22, 2013.  (TR 120-21.)   The Social Security Administration initially denied Plaintiff's claims on October 1, 2014.  (TR 66-79.)  On February 1, 2016, Plaintiff appeared with a representative and testified at a hearing before Administrative Law Judge (ALJ) Michael R. Dunn.  (TR 34-65.)   On May 3, 2016, the ALJ issued an unfavorable decision on Plaintiff's claims.  (TR 16-33.)   Plaintiff requested a review of the ALJ's decision with the Appeals Council, which was denied on April 17, 2017.  (TR 1-3.)  On June 19, 2017, Plaintiff commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.  (Docket no. 17; docket no. 20.)

## III.      HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of her medical issues.  (Docket no. 17, pp. 3-13.)  In addition, the ALJ summarized Plaintiff's medical record (TR 21-28), and Defendant relied on the ALJ's summary (docket no. 20, p. 4). Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record.  Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.      ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, and that Plaintiff did not engage in substantial gainful

activity since November 22, 2013, the alleged onset date.  (TR 21.)  The ALJ found that Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease, left shoulder rotator cuff tear, tenosynovitis, obesity.  (*Id*.)  Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id*.)  The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations:

- Plaintiff can lift ten pounds occasionally and less than ten pounds frequently; however, lifting and carrying independently with the left upper extremity is limited to no more than five pounds;

- Plaintiff can sit, stand, or walk, each for six out of eight hours;

- Plaintiff can push and pull as much as she can lift and carry, but she is also limited to no more than frequent pushing and pulling with the left upper extremity at less than five pounds;

- Plaintiff can frequently use hand controls with the left upper extremity;

- Plaintiff cannot reach overhead with the left upper extremity;

- Plaintiff can occasionally climb ramps or stairs, can never climb ladders or scaffolds, can frequently balance, can occasionally stoop, kneel, crouch, and crawl.

(*Id*. at 22.)  On the basis of this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that a person with Plaintiff's RFC is capable of performing Plaintiff's past relevant work as a quality control monitor.  (TR 28.)  Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time between the alleged onset date and the date of the decision.  (*Id*.)

## V.     LAW AND ANALYSIS

A.      **Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").   "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'"  *Gayheart v. Comm'r of Soc.*

*Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.      Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)      Plaintiff was not presently engaged in substantial gainful employment; and

(2)      Plaintiff suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.      Analysis

Plaintiff contends that the evidence of record does not support the ALJ's determination that she is capable of performing her past relevant work as a quality control monitor.  (Docket

no. 17, pp. 14-18.)   In particular, Plaintiff asserts that (1) the RFC should have precluded Plaintiff from "lifting at or above shoulder level with her left arm" (*id.* at 16) and that (2) her prior job as a quality control monitor was not performed in a sedentary capacity (*id.* at 15-16). The undersigned will address these arguments separately below.

      *1.  RFC*

First, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence.  (*Id.* at 16.)  As set forth above, the RFC provided that Plaintiff could not perform work that involved "reaching overhead with the left upper extremity."  (TR 22.)  In addition to this limitation, Plaintiff asserts that the RFC should have precluded her from "lifting at or above shoulder level with her left arm."  (Docket no. 17, p. 16.)

Plaintiff submits that while she was working for General Motors in August of 2013, she experienced "popping" in her left shoulder.  (*Id.* at 6.)  After this incident, GM placed Plaintiff on restrictions that precluded her from performing "overhead work" and from "lifting at or above shoulder level with her left arm."  (TR 224.)  Plaintiff asserts that the original restrictions were "subsequently approved and/or renewed on several occasions by Dr. [David] Detrisac" and "also approved by Dr. [Kenneth] Morrison."  (Docket no. 17, p. 17 (citing TR 205, 206, 209, 249, 395).)  On this basis, Plaintiff asserts that the RFC's "limitation merely to overhead reaching does not account for the entire problem."  (*Id.*)

In his decision, the ALJ accurately recounted that Plaintiff's original workplace restrictions precluded "overhead work or lifting at or above shoulder level with the left arm." (TR 24.)  However, in a separate passage, the ALJ remarked that Plaintiff "had been given work restrictions . . . [including] no overhead reaching above shoulder height," (TR 23) apparently conflating the "overhead work" limitation with the "lifting at or above shoulder level" restriction.

As set out below, this confusion is evident throughout Plaintiff's medical records and hearing testimony.

Plaintiff's workplace restrictions were originally imposed in September of 2013.  (TR 224.)  On October 11, 2013, Dr. Detrisac observed that Plaintiff "started a new job in early August and did . . . repetitive overhead reaching for 3 days."  (TR 209.)  Dr. Detrisac further noted that Plaintiff "complain[ed] of left shoulder pain with overhead activities."  (*Id.*)  On May 5, 2014, Dr. Lisa Beers purported to "extend" Plaintiff's original restrictions by precluding "work at or above shoulder height."  (TR 240.)  Similarly, on June 17, 2014, Dr. Beers "extended" Plaintiff's restrictions, prohibiting "work over shoulder height."  (TR 243.)  Notably, the ALJ gave only partial weight to Dr. Beers' opinion concerning Plaintiff's physical limitations, finding that the medical evidence of record supported his RFC determination.  (TR 27.)

At a physical therapy appointment on October 17, 2014, Plaintiff stated that she was restricted to "no overhead reaching," but did not mention a restriction on shoulder-level lifting.  (TR 419.)  The report from that visit states that "Plaintiff is unable to lift overhead/side without increased neck pain."  (*Id.*)

During the hearing before the ALJ, Plaintiff testified that when she stopped working at GM in November of 2013, her "restrictions was [*sic*] not to reach over my shoulder, and no more than 5 to 100 pounds."  (TR 46.)  Plaintiff explained that "[e]verything had to be, like, shoulder length, eye contact" and that she couldn't "reach up," but did not mention being limited from lifting at or above shoulder level.  (*Id.*)  Moreover, as demonstrated by the following exchange, questioning by Plaintiff's counsel focused on overhead reaching and ignored shoulder-level lifting:

Q.     Do you have any problems reaching, reaching out in front of you, reaching above your head?

A.     Yes.  As far as with my left hand I do.  . . .

Q.     What happens if you try to reach above your head with that left hand?

A.     Pain starts shooting down my neck and my shoulder.  And it goes down to my back.

(TR 57.)  Plaintiff's briefing displays a similar confusion between "overhead work" and "lifting at or above shoulder level," with Plaintiff asserting that the RFC should include "a limitation from reaching above shoulder level."  (Docket no. 21, p. 5.)

In his decision, the ALJ noted that "Claimant's left shoulder impairment had improved with treatment" and did not require surgical intervention.  (TR 26 (citing records of Dr. Detrisac, TR 299, 301, 302).)  The ALJ further observed that Plaintiff was "able to live alone [and] attend to her own personal needs with some difficulty in overhead reaching and taking longer to get dressed or attend[] to her hair," and that she was "able to drive, help attend to her mother's needs, engage in light household tasks, cook light meals, do dishes, do laundry and fold clothes, [and] grocery shop for herself and for her mother for 2-3 hours at a time."  (TR 27.)

Because the medical evidence and hearing testimony frequently omitted or obscured reference to the originally imposed restriction on shoulder-level lifting, the ALJ did not err by excluding this limitation from the RFC.  For the reasons set forth above, the RFC is supported by substantial evidence.

### 2.  *Quality Control Monitor Position*

As set forth above, the ALJ concluded that Plaintiff was capable of performing past relevant work as a quality control monitor.  During the hearing on February 1, 2016, Plaintiff described two different jobs that the VE classified as "quality control monitor," with DOT code 806.684-010.  (TR 59.)  The VE testified that Plaintiff performed one of the jobs in a sedentary

capacity and performed the other job in a light capacity.  (*Id.*)  Plaintiff did not contest this determination at the hearing, but now contends that both positions were performed in a light capacity, which is beyond her RFC.  (Docket no. 17, p. 15-16.)

In support, Plaintiff asserts that her quality control jobs involved "constantly . . . taking parts out of one bin, checking them, and then placing them in another."  (*Id.*)  Plaintiff contends that this activity matches the description of the "quality control monitor" position in DOT 806.367-018, which provides that a job should be rated as light work when it requires "constant pushing and/or pulling of materials."  (*Id.*)

Defendant contends that Plaintiff offered no evidence to demonstrate that her quality control jobs required "constant pushing and pulling."  (Docket no. 20, p. 16.)  Instead, Defendant asserts that Plaintiff "described picking up objects one at a time and placing them in bins, with no pacing requirement and with no reference of any pushing and pulling."  (*Id.*)  During the hearing, Plaintiff described her first quality control position (with Product Action International) as follows:

Q.  Now, if you're sitting down and it's the big latex tubs, what would you do? Exactly how would you do your job? Would the parts be in the tub?

A.  Yes.

Q.  And would you take them out of the tub?

A.  Yes. You will be bending – you don't bend down –

Q.  Take them out one at a time?

A.  Yes.

Q.  And how much would the parts weigh?

A.  Not more than, like – I think 2, 3 pounds, or maybe even smaller.

Q.  Okay.

A.  I think the most would be over 5 [pounds].

> Q.   What would you do with them? You'd look at them, make surveillance that they looked like they were –
>
> A.   Make sure that they measured with – we had work instructions that had a spec guide where you inspected the parts and everything, and then you put it in a new bin.

(TR 46-48).

Because Plaintiff offered no persuasive evidence to contradict the VE's determination that one of her quality control monitor positions was performed in a sedentary capacity, the ALJ did not err by concluding that Plaintiff has the capacity to perform her relevant past work as a quality control monitor.

## VI.   CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 17) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 20) be **GRANTED**, and that the case be dismissed in its entirety.

<u>**REVIEW OF REPORT AND RECOMMENDATION**</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: May 29, 2018             s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE


<u>**PROOF OF SERVICE**</u>

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: May 29, 2018             s/ Leanne Hosking
                                Case Manager

11